RODERICK T. KENNEDY, Judge (dissenting). KENNEDY, Judge (dissenting). {34} “Buy the ticket, take the ride.” The majority affirm by resting on the facts that not only did Patterson agree to this seriously flawed process but later failed to make arguments that might have been persuasive, if not dispositive, in its favor. Patterson having thus acquiesced in its own demise, the majority feel compelled to affirm the sanctions entered against Patterson. The district court found that Patterson argued that imposing sanctions would chill the settlement process and that Judge Currier “was trying to impose a judicially determined amount for purposes of settlement.” I believe that this is the nub of this case, and I disagree with the majority’s direction — that there is no abuse of discretion in sanctioning a litigant for having no intention to settle a case where the judicial settlement facilitator finds the offers that are ultimately made at his insistence to be unacceptable. {35} I concur in the majority’s invitation to the Supreme Court and the district courts to re-evaluate this rule and similar rules promoting such coercive use of “settlement conferences.” Mediation as contemplated by New Mexico’s new Mediation Procedures Act is an important tool. However, I believe that the district court’s and majority’s use of the term “mediation” is inappropriate in describing anything that happened in this case.[1] I therefore refer to the “settlement conference” or “conference.” The problem with the procedure in this case is that it is not mediation, it is not arbitration, but it imposes requirements on the parties in excess of the former without enforcing the procedural conditions of the latter. Perhaps the local rule provides for consistency, but in this case, imposing the requirement to compromise was an invitation to judicial overreaching. The threat of sanction if a party does not compromise further when the facilitating judge demands it steps outside of both the local rule and acceptable legal norms. {36} It is true that Patterson had the order defining “good faith” in its possession for some months prior to the settlement conference. Patterson did not object that the order went beyond the local rule’s mentioning of “good faith” to defining good faith as acceptance of forced settlement regardless of the merits of Patterson’s position. Patterson did not complain that as the order was written “good faith” was to be a thoroughly subjective evaluation by the settlement facilitator that would leave Patterson bereft of any meaningful notice as to what behavior on its part might trigger sanctions. The majority imply that due to the order, Patterson knew a failure to “compromise” its previous position of “no liability” would be regarded as not participating in good faith. The majority should not rest their case on Patterson’s “intent” not to settle being sanctionable when, as described below, Patterson compromised its intent, whatever it was, with two settlement offers. {37} It was clear under the local rule that Judge Currier would be an “active participant” who would “promote a settlement” as in previous conferences he had conducted. The majority state that the standard of conduct might have been ambiguous but that Patterson did not raise ambiguity as an argument. I believe that the standard of conduct required by the local rule and order was not ambiguous, that Patterson complied sufficiently to satisfy the order’s requirement to “compromise,” and that the facilitator’s arbitrary conduct exceeded the scope and powers conferred by the rule, resulting in an abuse of discretion-the sanctioning of Patterson. I therefore dissent. The Rule and the Order Are Not Ambiguous {38} I disagree that the language “compromise from the last offer” in the order is at all ambiguous, subjective, or lacking in restrictive meaning. The language is quite clear. The order also gave notice of what would be subject to sanctions: failing to “compromise from [a party’s] last offer.” Relying, as the facilitator and district court did, on Patterson’s lacking the intent to make an offer from the initial days of the ease through the start of the conference says nothing about its good faith because, as Patterson underscores, it made an offer. Patterson compromised “from [its] last offer” upon offering $1000 at the settlement conference. When asked for yet more money, again under threat of the facilitator’s contempt power, Patterson agreed to $5000 but conditioned its agreement on the sum being sufficient to settle the case. Thus, “bad faith” became part and parcel of a $4000 disagreement between the facilitator and Patterson once the facilitator unilaterally rejected Patterson’s $1000 and insisted on a larger sum. {39} The facilitator’s statement in the later hearing when he reviewed his order of sanctions for bad faith was that offering $1000 “is tantamount to offering nothing. The court determines this to be bad faith[.]” However, $1000 is not “nothing,” and Patterson argued below that having made the offer satisfied its obligation to compromise. Neither the local rule nor the order cloak the facilitator’s idea of a proper amount with validity or even presumptive reasonableness, nor does either require any party to accept the facilitator’s evaluation of the case’s merits. The majority say that Patterson was obligated to play by “the rules of the game.” That proposition should apply equally to the court that issued the order and to the facilitator who both knew of Patterson’s pre-conference position prior to the conference and was empowered by the order setting the terms of the conference. Contrary to the majority’s position, Patterson had no obligation to change its intent before the conference. The order imposed the obligation to compromise on the parties for purposes of the conference. Resistance to arbitrary demands by the facilitator thus improperly becomes a subjective measure of bad faith. Patterson’s conduct shows objectively that the requirement of compromising from its last offer was fulfilled. A Facilitator’s Insistence on a Specific Amount to Settle Is Improper {40} Patterson stated its position of no liability in the “confidential position paper” it submitted to Judge Currier, which the other parties also received. Patterson also made its no-liability position clear at the outset of the conference and made no initial offer. Patterson was therefore sanctioned for participating in the mediation when it had “no intent” to settle and for misleading the other parties to believe there was “at least a possibility” of settlement. Objectively, through its conduct, Patterson clearly abandoned acting on its intent, and that intent is irrelevant. That Patterson’s offering $1000 “only after” being threatened with sanctions should become the conclusive evidence of its bad faith is unjust. Patterson made an offer and made its next offer contingent upon an assurance, rather than upon Judge Currier’s belief that the amount would settle the case. Objectively, Patterson compromised, and then it objectively demonstrated its willingness to compromise further. This is not bad faith, and the majority substitute inchoate “intent” for objective acts on Patterson’s part to justify the sanctions. I cannot concur with doing so when the facts are plainly before us. {41} Court-annexed mandatory arbitration in New Mexico also requires good faith. One writer suggests that good faith determinations rest upon requiring only that “[e]ach party must be prepared to discuss his position on the issues presented by the case and to commit the party to a particular position in the litigation but should not be required to make a settlement offer or counteroffer.” William Lynch, Problems With Court-Annexed Mandatory Arbitration: Illustrations From the New Mexico Experience, 32 N.M. L.Rev. 181, 203 (2002). The rationale for this view is that “[t]he parties must be assured that they can forcefully argue their positions (i.e., that there is no liability, or that plaintiffs claim is not worth more than a certain sum) during the arbitration without the threat of sanctions being imposed.” Id. at 199. {42} Compromising from one’s previous position was contemplated by the parties to the settlement conference as an integral part of the district court’s order. Under this standard, an objective evaluation would inquire whether a party made a subsequent offer. Being sanctioned for resisting when the facilitating judge demands a larger offer chills the rights of each litigant to make its own determination as to whether a settlement is advantageous. Insisting on another offer is an action that I must regard as exceeding the power of the judge and abusing his discretion under the local rule and the district court’s order. The majority do not address the question of whether a party has an absolute right to refuse to settle a claim or whether exercising such refusal can be sanctioned. See Kamaunu v. Kaaea, 99 Hawaii 432, 56 P.3d 734, 743 (Ct.App.2002) (“We view with disfavor all pressure tactics whether directly or obliquely, to coerce settlement by litigants and their counsel. Failure to concur in what the [judge] presiding may consider an adequate settlement should not result in an imposition upon a litigant or [litigant’s] counsel, who reject [sic] it, of any retributive sanctions not specifically authorized by law.”). I believe a party has the right to refuse to settle. {43} I also regard the facilitating judge’s imposition of a bad faith sanction for not following his order to settle for a particular amount as outside the scope of LR5-205. This local rule requires of the facilitating judge “a frank appraisal of the judge’s opinion of the strengths and weaknesses of [each party’s] ease, including the judge’s appraisal of the value of the lawsuit.” LR5-205(H). After iterating along this line, LR5-205(J) first requires that the judge address all parties with an “opinion” of the case and “a fair settlement” value and then allows “[t]he parties ... to confer with each other to see if an agreement can be reached.” Thus, the rule authorizes the facilitating judge to say what the judge believes the case is worth but leaves to the parties the decision on whether to agree. The facilitator is not given the authority to impose a settlement value on the litigants using the lever of sanctions for bad faith. The rule does not contemplate the facilitator ordering a party to make a larger offer, and neither does the district court’s order. The order’s requirement of the parties was no more than to “compromise from their last offer.” {44} Patterson cites Dawson v. United States, 68 F.3d 886, 896 (5th Cir.1995), in arguing against the imposition of a good faith standard as a basis for sanctions. Dawson maintains and Patterson argues that a district judge’s disagreement with the merits of a settlement position asserted in good faith by a party cannot underlie an order imposing sanctions. Id. Halaby, McCrea & Cross v. Hoffman, 831 P.2d 902, 908 (Colo.1992), held that the “‘adequate’ amount of settlement authority will vary based on the circumstances of each ease, and a settlement conference judge should not impose sanctions because, in his opinion, the amount is insufficient.” In Halaby, the Colorado Supreme Court granted a writ of prohibition preventing the imposition of sanctions in a case such as this where the facilitator imposed sanctions when the party’s offer of a minimal sum ended the settlement conference. Id. at 904-05. The facilitator asserted positions almost identical to those in this case, referring to the hours spent by the parties and the nominal amount of the offer. Id. Alas, Patterson did not cite Halaby or Kamaunu. {45} For us to uphold the sanction because the facilitator “acted within the parameters of the rule and the order” ignores the fact that Patterson also fulfilled its obligation under the order. It also ignores that the determination of bad faith is rooted in either Patterson’s original intent not to settle, which Patterson obviously abandoned, or in no more than the facilitator’s unsupported determination that the $1000 offer should have been increased by $4000, with no assurance that he would impose his “opinion” of a settlement value similarly on the other parties if they did not accept it. That is arbitrary behavior on the part of the facilitator, and it is an abuse of the court’s discretion to sanction Patterson absent an objective criterion upon which to place any faith in the dollar amounts demanded by the facilitator. {46} If such “active participation” of a facilitator is allowed, the facilitator must bear some responsibility to demonstrate that any attempts to force a settlement are both objectively reasonable and equally applied to all participants. Here, that would require the facilitator to demonstrate in his findings that based on his representation of the sum’s acceptability, and having insisted on an offer of $5000 from Patterson, that he similarly insisted under threat of sanction that the Hotel accept that sum. Such a demonstration is not made, and I would hold that the district court’s affirmance of the sanctions constitutes an abuse of discretion equal to the facilitator’s. The Facilitator Should Recuse From Judging His Own Sanction {47} Last, empowering a facilitator to don a judge’s hat to rule on the propriety of his own conduct is the essence of apparent impropriety and unfairness and should not be countenanced. The district court’s subsequent independent review should have been more skeptical. A Strain on Judicial Efficiency {48} Implementation of a rule such as LR5-205 with an order containing language as we saw here creates problems for court efficiency and control of the docket. The majority point out that this process has now been used in a second front of attack by Patterson’s opponents, whose motions to sanction Patterson’s conduct in the conference succeeded. Using subjective criteria to judge good or bad faith and then sanctioning a party as in this case engenders this sort of “satellite litigation” that negatively impacts the district court’s claim to promoting economy and efficiency through alternative dispute resolution. Edward F. Sherman, CourtrMandated Alternative Dispute Resolution: What Form of Participation Should Be Required? 46 SMU L. Rev. 2079, 2093 (1993). Further, the clear message is that a party who believes it has no liability should not engage in a settlement conference under a local rule or enabling order like this one, even if the possibility exists that such a party would acquire enough information to justify changing its position. . The majority opinion's Introduction more than adequately notes the underlying attributes of mediation against which this process cannot measure up.