M. SUZANNE SYLVESTER, D.V.M., Respondent–Appellant,
v. ANIMAL EMERGENCY CLINIC OF OAHU, DAR-
RELL C. ALLISON, D.V.M.; K. F. CHOY, D.V.M.; NAM
Y. CHUNG, D.V.M.; JAMES E. DEEMER, D.V.M.;
PETER D. HERMAN, D.V.M.; JAMES H. HIGA, D.V.M.;
ROY E. HUBBARD, D.V.M.; FRANCIS T. KAMIYA,
D.V.M.; CLIFFORD KUMAMOTO, D.V.M.; TIMOTHY
LAU, D.V.M.; ROBERT A. MORRIS, D.V.M.; LESTER
G. NAITO, D.V.M.; EDWARD K. NAKAGAWA, D.V.M.;
DONALD H. WONG, D.V.M.; KERRY K. YOON, D.V.M.;
and RICHARD LAWTON, D.V.M.; Petitioners–Appellees

No. 14495

(CIV. NO. 87–3381–10)

FEBRUARY 7, 1992

LUM, C.J., PADGETT, HAYASHI,
WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY MOON, J.

We granted certiorari to review a decision of the Intermediate Court of Appeals (ICA) that set aside a settlement agreement based on lack of consideration. We find that the settlement agreement was based on a disputed and unliquidated claim which the parties resolved by their promise of mutual concessions as a means of

terminating their dispute. Thus, there was consideration. Accordingly, we reverse and remand for enforcement of the settlement agreement.

I.

The pertinent facts are as follows:

On March 8, 1986, plaintiff M. Suzanne Sylvester (Sylvester), a doctor of veterinary medicine, entered into an employment contract with defendant Animal Emergency Clinic of Oahu, a general partnership (the Clinic). The contract was for a term of two years, from April 1, 1986, through March 31, 1988.

A dispute arose between Sylvester and the Clinic over certain terms of the employment contract, and Sylvester received notice of her termination effective July 31, 1987. On October 23, 1987, Sylvester filed a complaint against the Clinic and its sixteen partners, all veterinarians (collectively, defendants), which she amended on January 12, 1988, alleging, among other things, breach of contract, unlawful discrimination, bad faith, fraud, misrepresentation, and defamation.

On February 4, 1988, defendants obtained a circuit court order compelling arbitration of Sylvester's causes of action, excluding her claims of unlawful discrimination and defamation. The case was then stayed pending arbitration.

On August 5, 1988, following an arbitration hearing, the arbitrator issued an award in Sylvester's favor for $15,512, plus ten percent interest from August 1, 1987, until paid. On August 18, 1988, Sylvester filed a motion to modify or correct the arbitration award, asserting that the principal amount should be modified to eliminate any reduction in damages based on unemployment compensation and maternity leave benefits she received after her termination. Defendants filed a memorandum in opposition to the motion to modify, asserting that Sylvester's motion was frivolous

and requesting that they be awarded attorneys' fees and costs under original Rule 11 of the Hawaii Rules of Civil Procedure (HRCP).[1] Sylvester's motion, along with defendants' request for sanctions, was scheduled to be heard on September 2, 1988.

On September 1, 1988, Sylvester's then–attorney, Phillip A. Li, telephoned defendants' attorney, Richard M. Rand, to discuss a settlement. Li advised Rand that Sylvester was willing to accept the arbitration award and dismiss the unlawful discrimination and defamation claims (non–arbitrable claims), with each party bearing their own attorneys' fees and costs. Rand responded that he would confer with his clients and call Li the next morning.

The next morning, Rand informed Li that defendants had accepted the offer of settlement. Li then informed the court that Sylvester's motion would be withdrawn. Later that morning, Rand notified Li that he had a check in the amount of the arbitration award with interest accrued to that date, September 2, 1988. According to Rand, Li told him "to hold on to it and that he would proceed to prepare the stipulation for dismissal with prejudice." However, Li subsequently learned that Sylvester did not want to settle the case.

On October 21, 1988, Edward D. Boyle, an attorney with the same law firm as Li, filed a pretrial statement that did not mention the settlement agreement. On January 3, 1989, Boyle demanded payment of the $15,512 plus ten percent interest in accordance with the arbitration award.

On January 11, 1989, defendants filed a motion to enforce the settlement reached on September 2, 1988. On February 7, 1989, after a hearing on the motion, the circuit court ruled that the oral settlement agreement was effective as of September 2, 1988 and entered its written order granting the motion to enforce

---

[1] HRCP Rule 11 was amended effective September 1, 1990.

the settlement agreement on March 14, 1989. The court subsequently denied Sylvester's motion for reconsideration.

On February 17, 1989, Sylvester filed a motion to confirm the arbitration award. On April 17, 1989, the circuit court confirmed the arbitration award of $15,512 to Sylvester, but held that the ten percent interest would accrue from January 3, 1989, when Sylvester's attorney demanded the amount due under the arbitration award, instead of August 1, 1987 as ordered by the arbitrator.

Because enforcement of the settlement agreement resulted in the dismissal of the non–arbitrable claims with prejudice, and the arbitration adjudicated the remaining claims, the circuit court entered a judgment dismissing the case on April 11, 1990. Sylvester appealed from the circuit court's orders enforcing the oral settlement agreement and denying her the interest set forth in the arbitration award. She argued that the settlement agreement was unenforceable because it lacked consideration, and that the circuit court erred in ruling that she had waived her right to the interest from August 1, 1987 to January 3, 1989.

On appeal, the ICA set aside the settlement agreement based on lack of consideration.[2] The ICA held that 1) defendants' counter–promise to pay to Sylvester the $15,512 with interest specified in the arbitration award was merely a promise to perform "an existing legal obligation," which defendants were under a duty to pay, and thus was not consideration; 2) "[d]efendants' forbearance to press their claim for attorneys' fees and costs under original HRCP Rule 11 was ill–founded and void and did not constitute consideration for Sylvester's promises to dismiss her non–arbitrable claims[]"; and 3) defendants' promise to stipulate to the dismissal of the non–arbitrable claims provided under HRCP Rule

---

2 *See Sylvester v. Animal Emergency Clinic*, No. 14495 (Haw. App. Dec. 27, 1990).

41(a)(1)(B) [3] did not confer any legal benefit to Sylvester because she could have dismissed her non-arbitrable claims by obtaining an order of the court pursuant to HRCP Rule 41(a)(2).[4] The ICA also ruled that interest on the amount of the arbitrator's award should include the period from August 1, 1987 to September 2, 1988 and from January 3, 1989, the date of attorney Boyle's request for payment, until paid. Defendants applied for a writ of certiorari, which we granted.

II.

The issue before us is whether the settlement agreement between Sylvester and defendants is unenforceable because of the lack of consideration. The trial court's determination that the settlement agreement was enforceable is a conclusion of law reviewable ***de novo***. ***Strouss v. Simmons***, 66 Haw. 32, 657 P.2d 1004 (1982); ***Molokoa Village Dev. Co. v. Kauai Elec. Co.***, 60 Haw. 582, 593 P.2d 375 (1979); ***Wiginton v. Pacific Credit Corp.***, 2 Haw. App. 435, 634 P.2d 111 (1981).

A "compromise" or "settlement," used synonymously herein, "is an agreement to terminate, by means of mutual concessions, a claim [5] which is disputed in good faith or unliquidated. It is an

---

[3] Rule 41(a)(1)(B), HRCP, provides for voluntary dismissal of an action by plaintiff without order of court "by filing a stipulation of dismissal signed by all parties who have appeared in the action."

[4] Rule 41(a)(2), HRCP, provides: "Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."

[5] A "claim" generally refers to the assertion of the right to maintain a cause of action and obtain judicial relief as well as the assertion of the right to raise a valid defense. ***See*** 15A Am. Jur. 2d ***Compromise and Settlement*** § 1 n.1 (1976).

amicable method of settling or resolving bona fide differences or uncertainties and is designed to prevent or put an end to litigation." 15A AM. JUR. 2D ***Compromise and Settlement*** § 1 (1976).

We acknowledge the well-settled rule that the law favors the resolution of controversies through compromise or settlement rather than by litigation. ***Dowsett v. Cashman***, 2 Haw. App. 77, 82–83, 625 P.2d 1064, 1068 (1981). Such alternative to court litigation not only brings finality to the uncertainties of the parties, but is consistent with this court's policy to foster amicable, efficient, and inexpensive resolutions of disputes. In turn, it is advantageous to judicial administration and thus to government and its citizens as a whole. We agree with the policy and law of settlements which the Supreme Court of Arkansas succinctly sets forth in ***Ragland v. Davis***, 301 Ark. 102, 106–07, 782 S.W.2d 560, 562 (1990) (citation omitted, emphasis added):

> ***Courts should, and do***, so far as they can do so legally and properly, ***support agreements which have for their object the amicable settlement of doubtful rights by parties; the consideration for such agreements is not only valuable, but highly meritorious.*** Because they promote peace, voluntary settlements of differences between parties having legal capacity to contract in respect of their rights, where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights and where there are no fraud, misrepresentations, concealments, or other misleading incidents, must stand and be enforced if intended by the parties to be final, notwithstanding the settlement made might not be that which the court would have decreed if the controversy had been brought before it for decision. Such agreements are binding without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice on the other.

A compromise, like any other contractual agreement, must be supported by consideration. ***See Dowsett v. Cashman***, 2 Haw. App. at 83, 625 P.2d at 1068. "[A] compromise . . . is supported by good consideration if it is based upon a disputed or unliquidated claim and if the parties make or promise mutual concessions as a means of terminating their dispute; no additional consideration is required." 15A AM. JUR. 2D ***Compromise and Settlement*** § 13 (1976).

Thus, in the present case, we must determine whether the settlement was based upon a disputed or unliquidated claim, and if so, whether the parties made or promised mutual concessions as a means of terminating the dispute. However, before doing so, it is necessary to understand the status of the litigation immediately prior to the settlement agreement. First, the arbitrator's award in favor of Sylvester had been rendered. Second, Sylvester's motion to modify or correct the award and defendants' request for sanctions under Rule 11 were to be heard on September 2, 1988. Since the arbitration award had yet to be confirmed, modified or corrected, the parties' right to appeal the award was a viable option. ***See*** Hawaii Revised Statutes (HRS) § 658–12.[6] Finally, the two non–arbitrable claims had not been litigated. Under these circumstances, the parties agreed to settle.

### A. Was the settlement based upon a disputed or unliquidated claim?

The ICA determined that defendants' counter–promise to pay Sylvester the $15,512 specified in the arbitration award, plus interest, did not amount to consideration because it was merely a

[6] Section 658–12, HRS, provides:

**Entry of judgment.** Upon the granting of an order, confirming, modifying, or correcting an award, the same shall be filed in the office of the clerk of the circuit court and this shall constitute the entry of judgment. An appeal may be taken from such judgment as hereinafter set forth.

promise to perform "an existing legal obligation," which defendants were under a duty to pay. The ICA evidently found that the arbitrator's award was not a disputed or unliquidated claim. However, we disagree. The arbitrator's award was an unliquidated claim because the amount of the award was disputed and uncertain.

The record clearly indicates that in her motion to modify or correct the arbitration award, Sylvester sought to increase the award by claiming that the arbitrator erred in reducing her damages by unemployment compensation and maternity leave benefits received after her termination. Further, Sylvester's recovery of the arbitrator's award also faced the possibility of being reduced by the amount of attorney's fees and costs the trial court would award if it determined that Sylvester's motion was "frivolous."[7] Moreover, the parties' decision to appeal the arbitration award was dependent on whether the trial court's ruling affected the amount of the award.

Therefore, defendants' counter–promise to perform in accordance with the arbitrator's award cannot be characterized as "an existing legal obligation" which defendants had a duty to pay because the amount was in dispute, was not yet ascertained, and was subject to appeal.

---

[7] The ICA determined that "[d]efendants failed to allege that Sylvester's attorney's action was a 'willful violation' of original HRCP Rule 11 or that Sylvester's or her attorney's action constituted 'bad faith.' Based on such circumstances, Defendants' claim for attorneys' fees and costs as a sanction under original HRCP Rule 11 was ill–founded and utterly void ***ab initio***." ***Sylvester***, slip op. at 10. However, we note that the ICA did not consider the ***merits*** of defendants' request.

Admittedly, original Rule 11 is silent with respect to imposing sanctions against a party for the willful violation of the rule by his or her attorney, and defendants may have technically failed to plead their Rule 11 sanction request properly. However, even in the absence of defendants' request, the trial court could have exercised its inherent powers and issued sanctions against Sylvester if it determined that her motion was frivolous, thus constituting an "abusive litigation practice." ***See Kukui Nuts of Hawaii, Inc. v. R. Baird & Co.***, 6 Haw. App. 431, 726 P.2d 268 (1986).

Since the basic function of settlement is to resolve doubt or uncertainty, a disputed or unliquidated claim must involve doubt or uncertainty in order to constitute sufficient foundation for a compromise. As indicated above, it is evident that the parties' dispute, just prior to settlement, involved a multitude of doubts and uncertainties. In addition to the uncertainty of the trial judge's ruling on Sylvester's motion to modify or correct and defendants' request for sanctions, and the potential appeals from decisions arising out of those proceedings, the parties were faced with the unpredictable determination of the non–arbitrable claims as well as the uncertainty of the outcome of any appeals that may have been taken. These future proceedings would have resulted in substantial expenditures of time, attorneys' fees, and costs to all parties. Further, depending on which of the parties ultimately prevailed on the various issues, the burden of paying attorney's fees and costs could have been shifted from one party to the other, and the recovery, if any, insignificant compared to the litigation expenses incurred.

### B. Did the parties make or promise mutual concessions as a means of terminating their dispute?

"There can be no valid compromise unless each party believes in good faith that he is making a concession[]" which is intended to terminate their dispute. 15A AM. JUR. 2D ***Compromise and Settlement*** § 19 (1976). Sylvester maintains that dismissal of the non–arbitrable claims with prejudice was not offered as a concession nor intended as part of the settlement agreement. However, our review of the record reveals otherwise.

Sylvester was the party who initiated settlement negotiations and suggested the mutual concessions in support of the agreement. Li, Sylvester's attorney, testified in his deposition that on September 1, 1988, he contacted defendants' counsel and offered the following compromise (emphasis added):

> my client wanted to get rid of the mess, that she wanted to be paid the amount that had been awarded in the arbitration, and that ***she would intend to not pursue her other claims that remained outside of the arbitration process.*** And that both sides would pay their own attorneys' fees and costs and we wouldn't — if that were the case, we would not show up for the hearing [on Sylvester's motion to modify or correct the award] the next morning.

Rand, defendants' attorney, in his affidavit filed January 11, 1989, stated (emphasis added):

> . . . Mr. Li proposed that Plaintiff withdraw her motion to modify or correct the award and that we enter into a stipulation for dismissal ***with prejudice*** of the remaining counts of the Complaint . . . .
>
> . . . .
>
> . . . I telephoned Mr. Li to tell him that I had the check and he told me to hold on to it and that he would proceed to prepare the stipulation for dismissal ***with prejudice.***

In his affidavit of March 24, 1989, Rand stated (emphasis added):

> At approximately 10:30 a.m. on the morning of Friday, September 2, 1988, I telephoned Mr. Phillip Li to tell him that I had the check. He told me to hold on to it and that he would proceed to prepare a stipulation for dismissal ***with prejudice*** pursuant to our settlement agreement.

A compromise or settlement agreement disposes of all issues the parties intended to settle. ***In re Estate of Engels,*** 10 Kan. App. 2d 103, 692 P.2d 400 (1984). Here, the record is clear. The parties intended to settle their dispute, which included dismissing all of Sylvester's claims with prejudice, based upon the following mutual concessions: 1) Sylvester promised to dismiss her non-arbitrable claims and withdraw her motion to modify or correct the arbitrator's award; 2) defendants promised to pay the arbitrator's award plus interest accrued up to September 2, 1988; and 3) each

side promised to bear their own attorneys' fees and costs. Close scrutiny of the record reveals no evidence or inference that either side did not make the above concessions in good faith.

We find that the settlement agreement was based on a disputed and unliquidated claim which the parties resolved by their promise of the aforestated mutual concessions as a means of terminating the lawsuit. Such mutual concessions were the only consideration necessary to support the settlement agreement and no other consideration was required.

Accordingly, we need not address the ICA's additional findings regarding consideration as it relates to defendants' forbearance to press their claim for Rule 11 sanctions and their promise to stipulate to dismiss the non–arbitrable claims.

Based on the foregoing, we conclude that the trial court correctly ruled that the settlement agreement was valid and enforceable.

III.

Having found the settlement to be valid and enforceable, the terms of the settlement agreement would control. Thus, we find that Sylvester is entitled to ten percent interest on the principal amount of $15,512 from August 1, 1987, up to September 2, 1988, when defendants tendered payment pursuant to the settlement agreement. Sylvester is not entitled to any other interest because attorney Boyle's demand for payment on January 3, 1989 was not in accord with the terms of the settlement agreement. We therefore reverse the ICA's decision that Sylvester is entitled to interest from January 3, 1989, until the principal amount of $15,512 is paid.

IV.

Based on the foregoing, we 1) reverse the ICA's setting aside of the settlement agreement and affirm the circuit court order enforcing the settlement; 2) reverse the ICA's decision with respect to computations of interest on the arbitration award and

find that Sylvester is entitled to ten percent interest on the principal amount of $15,512 from August 1, 1987 to September 2, 1988; 3) affirm the judgment dismissing this case with prejudice filed on April 11, 1990; 4) vacate that portion of the trial court's order of April 17, 1989 which confirmed the arbitration award and ruling on the interest period; and 5) remand the case for further proceedings consistent with this opinion.

*Edward deLappe Boyle* and *Ernest Nomura* (Cades Schutte Fleming & Wright, of counsel) for Respondent–Appellant.

*Harold Chu* and *Robert J. Morris* for Petitioners–Appellees.