57 P.3d 428

Benjamin KAMAUNU, Petitioner–
Plaintiff–Appellee,

v.

Garth KAAEA, Respondent–
Defendant–Appellant.

No. 22852.

Supreme Court of Hawai'i.

Nov. 7, 2002.

**504**

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by MOON, C.J.

Petitioner-plaintiff-appellee Benjamin Kamaunu (Plaintiff) timely applied for a writ of certiorari to review the decision of the Intermediate Court of Appeals (ICA) in *Kamaunu v. Kaaea,* 99 Hawai'i 432, 56 P.3d 734 (App. 2002), a personal injury action wherein the ICA remanded the case to the Second Circuit Court for a new trial. The ICA concluded that the trial court,[1] *inter alia,* abused its discretion when it sanctioned respondent-defendant-appellant Garth Kaaea (Defendant) for violating Rule 12.1 of the Rules of the Circuit Court (RCCH) (1984) by entering an order of default on the issue of liability (default liability).

In his application for writ of certiorari, Plaintiff contends that the ICA's decision: (1) conflicts with this court's precedent in *Canalez v. Bob's Appliance Service Center, Inc.,* 89 Hawai'i 292, 972 P.2d 295 (1999), and creates different standards for the application of RCCH Rule 12.1 to defendants and plaintiffs; (2) erroneously concludes that the trial court abused its discretion when it imposed default liability against Defendant; and (3) erroneously concludes that the trial court lost jurisdiction to hear and determine Plaintiff's post-trial motions when Defendant filed his notice of appeal. We disagree.

Plaintiff also contends that the ICA erred when it: (1) determined that Defendant had complete authority to settle the case; and (2) admonished trial courts to cease immediately the practice of ascertaining what occurred during the course of mandatory Court Annexed Arbitration Program (CAAP) proceedings, including the specifics of the arbitrator's award. Although we ultimately affirm the result reached in the ICA's decision, we believe these latter two contentions made by Plaintiff require further review.

## I. BACKGROUND

The following recitation by the ICA succinctly states the undisputed facts regarding

Richard L. Rost, for petitioner-plaintiff-appellant, on the writ.

---

1. The Honorable Shackley F. Raffetto presided over the proceedings at the trial court level, and the judgment was signed by the Honorable Rhonda I.L. Loo.

the accident that gave rise to the present case:

> At about 10 o'clock on the evening of June 20, 1997, Plaintiff walked to the middle of Kamehameha Avenue in Kahului, Maui, leaned over to pick up a quarter he thought he had seen, and was struck by a motor vehicle operated by Defendant. Plaintiff does not recall checking for cars prior to venturing onto the road, and he admits that he was intoxicated and wearing dark clothing at the time.

> Although Defendant saw Plaintiff immediately prior to the impact, Defendant admits that he did not sound the horn of his vehicle. Instead, he swerved the vehicle to the left to avoid hitting Plaintiff and did not step on the brakes until after the impact. Although it is unclear whether there were any street lights in the vicinity, it is undisputed that the headlights on Defendant's vehicle were operational at the time.

*Kamaunu,* 99 Hawai'i at 435, 56 P.3d at 737. The procedural history of this case is set forth in the ICA's decision and will not be repeated here. *See Kamaunu,* 56 P.3d at 737–42.

## II. *STANDARD OF REVIEW*

In granting a writ of certiorari, this court reviews decisions for (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decision and the magnitude of such errors or inconsistencies dictating the need for further appeal. *See* Hawai'i Revised Statutes (HRS) § 602–59 (1993).

## III. *DISCUSSION*

### A. *Defendant's Settlement Authority*

Pursuant to the express language of RCCH Rule 12.1(a)(6),[2] sanctions may be

imposed if: (1) a party or his or her attorney fails to appear at a scheduled settlement conference; (2) a party or his or her attorney neglects to discuss or attempt to negotiate a settlement prior to the conference; or (3) *a party fails to have a person authorized to settle the case present at the conference.* RCCH 12.1(a)(6) (emphasis added); *see also Canalez v. Bob's Appliance Service Center,* 89 Hawai'i 292, 304, 972 P.2d 295, 307 (1999) (recognizing a party's bad faith conduct as an additional ground for sanctions under RCCH Rule 12.1).

■ In its opinion, the ICA examined each of the grounds upon which sanctions could be authorized and concluded that none were satisfied by the facts in this case. With regard to the ICA's conclusion pertaining to the third ground, which Plaintiff challenges, the ICA stated: "Defendant, who had complete settlement authority in this case, was physically present with his attorney at the conference which resulted in the [trial] court's imposition of sanctions against Defendant." *Kamaunu,* 99 Hawai'i at 441, 56 P.3d at 743.[3]

■ The record indicates that: (1) Defendant was insured by Allstate Insurance Company (Allstate); (2) his policy limits were $100,000.00; and (3) he was represented by staff counsel for Allstate. Because Plaintiff's total damages were estimated not to exceed $100,000, it is highly unlikely that ultimate settlement authority rested with the insured. However, the question whether Defendant and/or his counsel had complete settlement authority was never raised during the course of the settlement conference. Moreover, nowhere in the record is there any indication—one way or the other—whether *Defendant* had full authority to settle the case. We, therefore, believe that the ICA committed a

---

**2.** RCCH Rule 12.1 is quoted in relevant part by the ICA. *See Kamaunu,* 99 Hawai'i at 440–41, 56 P.3d at 742–43.

**3.** To the extent that the ICA's conclusion can be read as implying that Defendant's physical presence at the settlement conference was sufficient to avoid the imposition of sanctions, we note that the mere physical presence of a defendant at a settlement conference is insufficient to satisfy the

requirements of RCCH 12.1, unless the defendant, in fact, has authority to settle the case. It is well-understood that no-fault insurance is often available to cover a defendant's negligence in personal injury actions arising out of motor vehicle accidents. In such cases, the authority to settle a case generally lies with the defendant's insurer, especially where the settlement value does not exceed the insured's policy limits.

grave error of fact in determining that Defendant had complete authority to settle the case.

■ Nevertheless, resolution of this question is irrelevant because the record clearly demonstrates that the trial court's imposition of sanctions was premised on Defendant's failure to make a monetary settlement offer[4] and on his firm intention to go to trial, not on a failure to ensure the presence of a representative with complete settlement authority at the settlement conference. *Cf. Gump v. Walmart Stores, Inc.*, 93 Hawai'i 428, 453, 5 P.3d 418, 443 (App.1999) (holding that, although "[a] firm intention to go to trial need not preclude earnest settlement discussions[,]" sanctions were appropriate where party wilfully disregarded order mandating presence of party representative with full settlement authority), *aff'd in part and rev'd in part on other grounds*, 93 Hawai'i 417, 5 P.3d 407 (2000); *see also G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 654 (7th Cir.1989) (affirming imposition of sanctions where court order mandating presence of party representative with complete settlement authority was disobeyed, but noting that "[i]f this case represented a situation where [defendant] had sent a corporate representative and was sanctioned because that person refused to make an offer to pay money—that is, refused to submit to settlement coercion—we would be faced with a decidedly different issue—a situation we would not countenance.").

## B. ICA's Admonition

■ In commenting upon Plaintiff's statement in his answering brief that "[i]t is not uncommon for judges during settlement conference to inquire about what occurred during the arbitration process[,]" *Kamaunu*, 99 Hawai'i at 445, 56 P.3d at 747, the ICA "urge[d] that the practice be ceased immediately." *Id.* Relying on the express language of HAR Rule 23, *see Kamaunu*, 99 Hawai'i at

445–46, 56 P.3d at 747–48 (requiring the arbitrator's award be sealed if a request for trial *de novo* is filed), the ICA held that the trial court "clearly abused its discretion when it sanctioned Defendant by apportioning his and Plaintiff's negligence based on the arbitrator's award." *Id.* at 746. Plaintiff contends that HAR Rule 23 requires only that the *award* be sealed, but that nothing in the rule bars the trial court or counsel from discussing the substance of the underlying CAAP proceeding during a settlement conference. We agree and, therefore, overrule the ICA's interpretation of HAR Rule 23.

We acknowledge the ICA's concerns regarding the importance of maintaining the confidentiality of disclosures made in the context of a mandatory CAAP proceeding. As others have noted:

> The assurance of confidentiality encourages parties to be candid and to participate fully in the process. A mediator's ability to draw out the parties' underlying interests and concerns may require discussion—and sometimes admissions-of facts that disputants would not otherwise concede. Further, because parties often speak in mediation without the expectation that they will later be bound in another forum by what they said, subsequent use of their communications also could be unfairly prejudicial.... Finally, *confidentiality in mediation may enhance the use of mediation and optimize the settlement potential of a case.*

Center for Dispute Settlement, The Institute of Judicial Administration, National Standards for Court Connected Mediation Programs, at 9–1 (emphasis added).

However, in its attempt to preserve the confidentiality of the CAAP proceedings, the ICA failed to take into account the different functions performed by the trial court when it acts as mediator in cases involving jury trial and when it acts as fact finder in jury-

---

4. We note that Defendant offered a "walk-away" settlement, *i.e.*, allowing Plaintiff to dismiss the complaint with each party to bear their own costs. The trial court characterized this walk-away settlement offer as "zero, no offer." This characterization, however, fails to take into account the fact that, if Defendant had prevailed at the trial *de novo*, Plaintiff could have been assessed the "costs of trial and all other remedies as provided by law." Hawai'i Arbitration Rules (HAR) Rule 25(B). Therefore, it cannot be said that Defendant's settlement offer was without value.

waived trials. This failure has resulted in an admonition that, if allowed to stand, would gravely impair the ability of trial courts to effectively mediate disputes in the context of settlement conferences.

We have often recognized "the well-settled rule that the law favors the resolution of controversies through compromise or settlement rather than by litigation." *Sylvester v. Animal Emergency Clinic of Oahu,* 72 Haw. 560, 566, 825 P.2d 1053, 1056 (1992) (citing *Dowsett v. Cashman,* 2 Haw.App. 77, 82–83, 625 P.2d 1064, 1068 (1981)). This court has also recognized that this

> alternative to court litigation not only brings finality to the uncertainties of the parties, but is consistent with this court's policy to foster amicable, efficient, and inexpensive resolutions of disputes. In turn, it is advantageous to judicial administration and thus to government and its citizens as a whole.

*Id.* at 566, 825 P.2d at 1056–57.

However, these objectives can be more readily fulfilled if trial courts—when acting as mediators—have knowledge of information regarding prior arbitration proceedings or previous settlement attempts. The results of a survey of almost 1,900 litigators conducted by United States Magistrate Judge Wayne Brazil confirm that

> the judge who is likely to contribute most to the settlement dynamic is active rather than passive, analytical rather than emotional or coercive, learns the facts and law involved in the dispute instead of relying on superficial formulas or simplistic compromises, and, after listening and learning with an open mind, offers explicit assessments of parties' positions and specific suggestions for ways to reach solutions. A majority of attorneys surveyed obviously believe that the judiciary's status and unique perspective converge to create a special potential for assisting in this sensitive business, but that *this potential can be realized only by judges who, first, do their homework, then muster the courage to express their views and the self-control to do so tactfully.*

Another important message in our data is that among various techniques judges might use to facilitate the settlement process lawyers value those in which the judge ... expresses an opinion, offers a suggestion or conducts some analysis much more than they value the techniques in which the judge asks the attorneys to make some presentation or conduct some analysis.... *[W]hat litigators want most from judges in settlement conferences is expression of analytical opinion.*

William L. Adams, *Let's Make a Deal: Effective Utilization of Judicial Settlements in State and Federal Courts,* 72 Or. L.Rev. 427, 446–47 (1993) (quoting Wayne D. Brazil, *Settling Civil Suits: Litigators, Views About Appropriate Roles and Effective Techniques for Federal Judges* 2 (1985)) (emphases added). Allowing judges access to information regarding underlying arbitration proceedings will enable them—in their mediation role—to better assess the value of a case and the respective strengths or weaknesses in the positions of the parties, thereby rendering the settlement process more meaningful for all of the participants. *See also* Samuel G. DeSimone, The National Judicial College, Judicial Settlement Manual, Fostering Settlements Through Judicial Activism, 10–11 (1991) ("The judge active in the settlement process should also consider the use of ... complementary means of resolving the dispute. .... I can think of no better way than to submit such a matter before an arbitration panel acting in effect as a court who will come up with a value for the case. The settlement judge [(as mediator)], *armed with this non-mandatory arbitration figure,* may well then settle the case in a quick fashion." (Emphasis added.)).

In the event that a trial court's efforts to promote a settlement prove fruitless and the case proceeds to a jury trial, the interests of party litigants in the confidentiality of information disclosed during an arbitration proceeding are preserved by virtue of HAR Rule 23. The rule makes clear that the jury, as the trier of fact, is to be insulated from knowledge of the underlying CAAP proceeding. Similarly, the jury will not be privy to inadmissible evidence or confidences that may have emerged during the pretrial settlement process.

In jury-waived trial situations, we acknowledge the fact that HAR Rule 23 provides in relevant part that:

(A) The clerk shall seal any arbitration award if a trial *de novo* is requested.... The sealed arbitration award shall not be opened ... *until after the judge has rendered a decision in a court trial.*

HAR Rule 23(A) (emphasis added). However, even in a bench trial, the interests of the party litigants are similarly preserved because the settlement judge customarily would not preside over the trial, unless counsel and the parties affirmatively stipulate to the trial judge's participation in settlement discussions. Nevertheless, where a party litigant is concerned that a judge presiding over a jury-waived trial has become biased as the result of exposure to the confidential information shared during the settlement conference, the party is free to move for disqualification pursuant to HRS § 601–7 (1993).[5] *See State v. Ross*, 89 Hawai'i 371, 974 P.2d 11 (1998) (analyzing the appropriate procedure for seeking disqualification based on personal bias).

## IV. *CONCLUSION*

Based on the foregoing, we overrule the ICA's admonition to the trial courts. In all other respects, we affirm the ICA's decision.

---

**5.** HRS § 601–7 governs the disqualification of judges in this state and provides, in relevant part, that:

Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.