**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000094
20-APR-2023
07:53 AM
Dkt. 69 SO**

NO. CAAP-19-0000094

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

PAIGE T. C. DRUMMOND, Plaintiff-Appellee,
v.
ABRAHAM W. D. CHO, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1DV161007974)

**SUMMARY DISPOSITION ORDER**
(By: Hiraoka, Presiding Judge, Nakasone and McCullen, JJ.)

Defendant-Appellant **Abraham** W. D. Cho appeals from the
**"Order** re: Plaintiff's Motion to Enforce Settlement Agreement,
Impose Sanctions and Award Attorney's Fees and Costs," entered by
the Family Court of the First Circuit on October 4, 2018; and the
"Decree Granting Absolute Divorce" (**Divorce Decree**) entered by
the family court on January 18, 2019.[1]  For the reasons explained
below, we affirm.

Abraham was married to Plaintiff-Appellee **Karlin** Kinuyo
Cho[2] in 1967.  They separated in 1998.  Karlin filed for divorce

---

[1]     The Honorable Gale L.F. Ching presided.

[2]     Karlin died after entry of the Divorce Decree.  We granted a
motion to substitute Paige T. C. Drummond for Karlin in this appeal on May 23,
2019.  Paige is Karlin's and Abraham's granddaughter.  They adopted Paige
after their daughter — Paige's mother — died.

in 2016, when both were in their seventies.  Both were represented by counsel throughout the divorce proceeding.

On August 22, 2018, Karlin filed a motion to enforce a settlement, impose sanctions, and recover attorneys fees and costs from Abraham.  The motion was supported by Karlin's declaration and a number of exhibits.  Abraham's memorandum in opposition was supported by his declaration and exhibits.  Karlin filed a reply memorandum, supported by her declaration and a declaration by Paige **Drummond**.  Abraham then filed a supplemental declaration and additional exhibits.

The motion was heard on October 3, 2018.  The family court enforced the settlement but denied the request for sanctions, attorneys fees, and costs.[3]  The Order was entered on October 4, 2018.  The Divorce Decree was entered on January 18, 2019.  This appeal followed.

A motion to enforce a settlement is reviewed under the same standard as a motion for summary judgment.  McKenna v. Ass'n of Apt. Owners of Elima Lani, 148 Hawaiʻi 233, 239, 470 P.3d 1110, 1116 (2020).  "Accordingly, granting a motion to enforce a settlement agreement is appropriate if there is no genuine issue of material fact and as a matter of law the parties entered into a valid compromise agreement."[4]  Id. (cleaned up).

Settlement agreements are contracts.  McKenna, 148 Hawaiʻi at 241, 470 P.3d at 1118.  The requirements for contract formation must be met for an enforceable settlement to exist. Id.  The elements of contract formation are: (1) capacity to contract, (2) offer, (3) acceptance, and (4) consideration. Calipjo v. Purdy, 144 Hawaiʻi 266, 280, 439 P.3d 218, 232 (2019). "A compromise is supported by good consideration if it is based upon a disputed or unliquidated claim and if the parties make or

_____

[3]     Karlin hasn't appealed from the denial of her request for attorneys fees and costs.

[4]     We disregard the family court's findings of fact and conclusions of law entered on May 15, 2019, because a trial court deciding a motion for summary judgment doesn't make findings on disputed material facts.

promise mutual concessions as a means of terminating their dispute; no additional consideration is required." Sylvester v. Animal Emergency Clinic of Oahu, 72 Haw. 560, 567, 825 P.2d 1053, 1057 (1992) (cleaned up).

The declarations and exhibits submitted by the parties, viewed in the light most favorable to Abraham, McKenna, 148 Hawaiʻi at 242, 470 P.3d at 1119, showed that on September 24, 2017, Abraham's attorney Gary **Okuda** emailed a settlement offer to Karlin's attorney Jamie **Young**.  The terms offered by Abraham were:

> 1.    The parties shall be divorced.
>
> 2.    KARLIN K. CHO shall be awarded the [Mānoa house]. KARLIN shall be responsible for all loans or encumbrances covering the property, and shall obtain the release of ABRAHAM CHO for such loans, liens or encumbrances, ABRAHAM CHO shall be released from any and all loans, liens or encumbrance before the entry of the Divorce Decree in this matter.  (Reason for this condition: the money from these loans were used to purchase the [Mānoa house], which KARLIN will be retaining.)
>
> 3.    ABRAHAM CHO shall be awarded the [Pearl City house]. KARLIN shall be responsible for all loans or encumbrances covering the property, and shall obtain the release of ABRAHAM CHO for such loans, liens or encumbrances, ABRAHAM CHO shall be released from any and all loans, liens or encumbrance before the entry of the Divorce Decree in this matter.  (Reason for this condition: the money from these loans were used to purchase the [Mānoa house], which KARLIN will be retaining.)
>
> 4.    Each party will otherwise keep his or her own property or assets in his or her own control or custody.

Abraham doesn't contend that he lacked capacity to contract, or that he didn't authorize Okuda to communicate his settlement offer to Karlin's attorney.  Karlin unconditionally accepted Abraham's offer on September 26, 2017, by email from Young to Okuda.  Consideration was exchanged.  All elements of contract formation exist.  Abraham nevertheless makes three arguments that the family court erred by enforcing the parties' settlement.

**(A)** Abraham first argues that there were genuine issues of material fact about: **(1)** whether Karlin was unduly influenced by Drummond; **(2)** whether Karlin misrepresented her financial condition; and **(3)** Karlin's breach of her obligation to release Abraham from the mortgage and liens on the Mānoa and Pearl City houses before seeking to enforce the agreement.

**(1)** Abraham argues that Drummond exerted undue influence over Karlin. It isn't material whether Drummond unduly influenced Karlin. In this case, Abraham "was the party who initiated settlement negotiations and suggested the mutual concessions in support of the agreement." Sylvester, 72 Haw. at 569, 825 P.2d at 1058. *Karlin* unconditionally accepted *Abraham*'s offer. Even if Drummond had somehow influenced Karlin to accept Abraham's settlement offer, that would have benefitted Abraham. Under the circumstances of this case, Abraham's undue influence argument has no merit.

**(2)** Abraham argues that Karlin misrepresented her financial condition. The uncontroverted evidence showed that Young and Okuda met on May 10, 2017, to exchange the parties' financial information. Karlin responded to interrogatories served by Abraham. The parties exchanged documents by Dropbox in July and August 2017.

Abraham argues: "*it seems* clear that Karlin's 5/10/2017 financials were incorrect, or are *now* incorrect[,]" when compared to her August 3, 2018 financial disclosures (emphasis added). He points out that as of August 2018, Karlin's disability income was greater,[5] and the mortgage balance on the Mānoa house was lower, so that "the information provided to me by Karlin in May, 2017

---

[5] The parties don't argue, and we don't decide, whether disability insurance benefits constitute income, or must be listed as assets, gifts, or inheritances on the parties' Property Division Chart. We note that Karlin's income wasn't relevant to calculation of child support because she and Abraham had no minor children, nor was it relevant to calculation of spousal support because Karlin's complaint didn't seek spousal support and Abraham's answer admitted that he wasn't entitled to spousal support.

was either incorrect, or has materially changed from that time to now."

The settlement agreement was formed on September 26, 2017, when Karlin accepted Abraham's offer. Karlin's declarations established that she had "suffered a stroke in 2014 that caused left-sided paralysis and partial blindness[,]" and explained that her disability income increased after May 2017 — after her initial financial disclosures — "to help cover the extra expenses of specialist care and the resulting ancillary costs such as assisted travel" after her physical condition deteriorated. She also explained that the mortgage balance on the Mānoa house had decreased because she "made consistent payments on the mortgage." Abraham offered no evidence that Karlin's May 2017 financial disclosures were false when made; his unsupported speculation that Karlin may have misrepresented her financial condition before he made his settlement offer was insufficient to create a genuine issue of material fact about the settlement's enforceability.

(3) Abraham argues that Karlin "had not performed, and there were genuine issues of fact as to whether KARLIN was able to perform, her [sic] to remove and release ABRAHAM from all loans, liens, and encumbrances relating to the [Mānoa and Pearl City houses], before the Divorce Decree was entered." The record contains the following uncontroverted evidence:

On January 9, 2018, Young informed Okuda that Karlin was trying to get pre-approval from a bank for a loan to remove Abraham from the mortgage and home equity line of credit for the Mānoa and Pearl City houses. Young asked for confirmation that if Karlin obtained a pre-approval letter, Abraham would sign the divorce decree attached to Young's email. On February 13, 2018, Young emailed Okuda confirming her voicemail messages that Karlin had obtained a loan to take Abraham "off of the mortgages." Okuda replied by email the same day, asking Young to "email me the details and I will check with [Abraham] if the proposal is acceptable."

5

On March 1, 2018, Okuda requested escrow instructions from Young. On March 2, 2018, Young emailed escrow instructions approved by Title Guaranty, and a form of divorce decree to be attached to the escrow instructions, to Okuda. On April 26, 2018, Okuda emailed Young that he "will be making some revisions to [the] proposed decree."

On May 17, 2018, Okuda emailed to Young an "Agreement to Facilitate Divorce," which he stated "intended to provide a framework to address both [Karlin]'s lender's stated need to have certain documents executed, and [Abraham]'s concern that all documents and agreements be conditioned upon the completion of the divorce." On May 21, 2018, Young emailed Okuda with three points of clarification on the Agreement to Facilitate Divorce. Karlin's declaration stated that from October 1, 2017 to July 31, 2018, she spent $24,485.47 in attorneys fees and costs, $415 with Finance Factors on a loan, and $981.49 with Title Guaranty, to comply with her settlement obligations.

The Divorce Decree was filed on January 18, 2019. As to the Mānoa house, the Divorce Decree stated:

> [Karlin] shall be responsible for all loans or encumbrances covering the property, and shall obtain the release of [Abraham] for such loans, liens or encumbrances **prior to the Family Court's entry of this Decree**. [Karlin] and [Abraham] shall cooperate to execute any documents necessary to transfer the [Mānoa] Property to [Karlin] only.

(Emphasis added.) As to the Pearl City house, the Divorce Decree stated:

> [Abraham] shall be awarded the real property held jointly by the parties and located at . . . Pearl City . . . . [Karlin] shall be responsible for all loans or encumbrances covering the property, and shall obtain the release of [Abraham] for [sic] such loans, liens or encumbrances **prior to the Family Court's entry of this Decree**. [Karlin] and [Abraham] shall cooperate to execute any documents necessary to transfer the [Pearl City house] to [Abraham] only.

(Emphasis added.)

Abraham signed the Divorce Decree on November 15, 2018. Abraham's attorney Steven **Kim**[6] approved the form of the Divorce Decree on November 15, 2018.  The record contains no indication that Abraham moved for relief under Hawaiʻi Family Court Rules Rule 60(b) after the Divorce Decree was filed on January 18, 2019, on the grounds that Karlin failed to comply with a condition precedent to entry of the Divorce Decree.  There is no evidence in the record that Karlin failed to perform her obligations concerning the ownership of, or the debt on, the Mānoa or Pearl City houses before the family court entered the Divorce Decree.

**(B)**  Abraham next argues that the family court erred because "the Settlement Agreement was ambiguous, and in any event, did not constitute the full, complete, integrated agreement of the parties."

**(1)**  A contract is ambiguous when its terms are reasonably susceptible to more than one meaning.  Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawaiʻi 36, 45, 305 P.3d 452, 461 (2013).  The determination whether a contract is ambiguous is a question of law that is freely reviewable on appeal.  Id.  Abraham doesn't specify which terms of his settlement offer — which was unconditionally accepted by Karlin — were ambiguous.  We conclude that Okuda's September 24, 2017 email to Young, containing the terms of Abraham's settlement offer to Karlin, was not ambiguous.

**(2)**  Hawaii divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts.  Eaton v. Eaton, 7 Haw. App. 111, 118, 748 P.2d 801, 805 (1987).  Abraham's settlement offer addressed parts (1) and (4).  Parts (2) and (3) weren't at issue because the parties had no minor children,

---

[6]    Okuda withdrew and Steven **Kim** appeared as Abraham's counsel on May 30, 2018.

Karlin's complaint for divorce didn't seek spousal support, and Abraham's answer admitted that he wasn't entitled to spousal support. Thus, Abraham's settlement offer addressed all issues presented by the divorce case. "A compromise or settlement agreement disposes of all issues the parties intended to settle." Sylvester, 72 Haw. at 570, 825 P.2d at 1059. Karlin's unconditional acceptance resolved all issues in the divorce case.

**(C)** Finally, Abraham argues that "the family court erred in deciding the issue of whether the settlement agreement was unconscionable, without holding an evidentiary hearing on the issue of whether the agreement was unfairly one-sided and whether Karlin's prior financial disclosures were materially misleading concerning her actual financial condition, constituting unfair surprise."

**(1)** Abraham cites Lewis v. Lewis, 69 Haw. 497, 748 P.2d 1362 (1988) and Balogh v. Balogh, 134 Hawaiʻi 29, 332 P.3d 631 (2014) in support of his argument that the settlement offer he made was unconscionable to himself. In Balogh the supreme court held that

> the family court must enforce all valid and enforceable postmarital and separation agreements. A postmarital or separation agreement is enforceable if the agreement is "not unconscionable and has been voluntarily entered into by the parties with the knowledge of the financial situation of the [other] spouse." See Lewis v. Lewis, 69 Haw. 497, 501, 748 P.2d 1362, 1366 (1988) . . . .
>
> Unconscionability encompasses two principles: one-sidedness and unfair surprise. Lewis, 69 Haw. at 502, 748 P.2d at 1366. One-sidedness (i.e., substantive unconscionability) means that the agreement "leaves a post-divorce economic situation that is unjustly disproportionate." Id. Unfair surprise (i.e., procedural unconscionability) means that "one party did not have full and adequate knowledge of the other party's financial condition when the [marital] agreement was executed." Id. A contract that is merely "inequitable" is not unenforceable. Id. at 500, 748 P.2d at 1366. ***The unconscionability of an agreement regarding the division of property is evaluated at the time the agreement was executed.***

Balogh, 134 Hawaiʻi at 40-41, 332 P.3d at 642-43 (bold italics added) (footnotes and some citations omitted).  The supreme court has also held that settlement agreements "are binding without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice on the other."  Sylvester, 72 Haw. at 566, 825 P.2d at 1057 (citation omitted).  In divorce cases:

> parties may have legitimate reasons for entering into a somewhat one-sided postmarital agreement, and may do so knowingly and voluntarily.  Permitting the family court to invalidate such agreements without requiring a showing of extraordinary one-sidedness would frustrate the purpose of HRS § 572-22,[7] which permits spouses to enter into enforceable contracts with each other.

Balogh, 134 Hawaiʻi at 42, 332 P.3d at 644.

Unconscionability is a question of law, reviewable de novo.  Balogh, 134 Hawaiʻi at 42-43, 332 P.3d at 644-45.  We conclude that Abraham failed to show that his September 24, 2017 settlement offer was extraordinarily one-sided against himself when he made it, or two days later when Karlin unconditionally accepted it.

**(2)**  As discussed in section (A)(2), Abraham offered no evidence that Karlin's May 2017 financial disclosures were false when made.  His unsupported speculation that Karlin may have misrepresented her financial condition before he made his settlement offer is insufficient to establish a genuine issue of material fact about unfair surprise that would render the settlement unenforceable.

For the foregoing reasons, we affirm the "Order re: Plaintiff's Motion to Enforce Settlement Agreement, Impose Sanctions and Award Attorney's Fees and Costs," entered by the

---

[7]    HRS § 572-22 (2018) provided, in relevant part:

A married person may make contracts, oral and written, sealed and unsealed, with his or her spouse, or any other person, in the same manner as if he or she were sole.

9

family court on October 4, 2018; and the "Decree Granting Absolute Divorce" entered by the family court on January 18, 2019.

DATED:  Honolulu, Hawaiʻi, April 20, 2023.

On the briefs:

Steven J. Kim,
for Defendant-Appellant.

Rebecca A. Copeland,
for Plaintiff-Appellee
Paige T. C. Drummond,
Personal Representative
of the Estate of Karlin
Kinuyo Cho.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge