HODDICK, REINWALD, O'CONNOR & MARRACK, Plaintiff-Appellee, *v.* CHARLES S. LOTSOF, Defendant-Appellant

NO. 10112

(CIVIL NO. 62845)

MAY 14, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant lawyer Charles S. Lotsof (Lotsof) appeals both the May 23, 1984 judgment and the November 20, 1984 award of costs in favor of

plaintiff law firm Hoddick, Reinwald, O'Connor & Marrack[1] (HROM). We affirm the May 23, 1984 judgment and vacate the November 20, 1984 award of costs.

In *Manley v. Akamai Corporation,* Third Circuit Civil No. 3214 (Civil 3214), the plaintiff, Jacob R. B. Manley (Manley), was represented by five successive lawyers (or law firms). HROM was the fifth counsel. Hyman Greenstein (Greenstein) was the fourth counsel. Manley agreed to pay Greenstein all of his out-of-pocket costs and a contingent fee of one-third of the recovery. Lotsof was Greenstein's salaried employee assigned to work on Manley's behalf.

In April 1975 Lotsof used his accrued vacation time in preparation of leaving Greenstein's employ.

By memorandum dated May 5, 1975, Greenstein wrote to Lotsof in relevant part as follows:

1. I wish to relieve you of any further duty and responsibility in the Manley case.

2. Kindly list for me all of the files you do want to take with you - and we will make equitable arrangement concerning the same upon my return to the city.

(Plaintiff's Exhibit 22.)

By letter dated May 15, 1975, Manley wrote to Greenstein as follows:

This letter will serve to confirm our earlier discussion and agreement this morning.

I desire to retain and employ Dennis E. W. O'Connor, Esq. and his associates to represent me exclusively in the above captioned matter, thereby relieving you and your firm of any further responsibility.

I hereby agree to reimburse you for all actual out-of-pocket expenses and costs that your firm has advanced (excepting, of course, fees for attorneys, secretarial or overhead expenses). In the event I am successful in the above captioned matter, I agree to pay you the following:

a. Such sum as fairly represents the work your associate Mr. Charles Lotsof has expended in the matter up to date;

---

[1] In 1975 plaintiff law firm Hoddick, Reinwald, O'Connor & Marrack was known as Anthony, Hoddick, Reinwald & O'Connor.

b. I agree to pay to you or assign to you 10% of the net amount received by me either by way of funds or property derived as a result of the within lawsuit.

(The term net shall be construed to be net amount received by me after deduction of all attorneys' fees.)

(Plaintiff's Exhibit 6 at 1.) Greenstein confirmed the agreement.

When Manley hired HROM, they agreed upon a contingent attorney fee of 50%.[2]

On August 27, 1975 Manley settled Civil 3214 for $26,000 cash and a $75,000 secured five-year installment promissory note providing for interest at eight percent per annum. The final installment was paid on May 28, 1982.

On September 3, 1975 Manley and HROM reduced their fee agreement to writing as follows:

From the $26,000 cash the outstanding fees and costs of attorneys Hyman Greenstein, Allan Levin and Steve Christensen will be paid in an amount which approximates $3,200. In addition, the costs expended by O'Connor and the law firm to date will be paid. The balance of the money, or approximately $22,000, will be paid to Manley.

In accordance with the terms of the settlement the $75,000 note will be held by O'Connor and the law firm. All proceeds from the

---

[2]In his deposition, which was introduced in evidence, Manley testified in relevant part as follows:

Q. Was Mr. O'Connor interested in taking the case?

A. I don't think he was aggressively interested in it at the time. He indicated interest. I'm sure he didn't need another client. I felt that I needed O'Connor more than he needed me, so I was aggressive.

\* \* \* \* \*

I let him know that I would be interested in making an exceptional proposal to him to get his ability in this, to get him in this litigation I was involved in.

\* \* \* \* \*

And then I proposed — I guess after we discussed it back and forth, I proposed a 50 percent contingency with Mr. O'Connor, plus costs, plus his costs.

\* \* \* \* \*

Q. [I]n your discussions with Mr. O'Connor, did you inform Mr. O'Connor that you would take responsibility for paying your other lawyers?

A. Yes.

Plaintiff's Exhibit 40 at 19-23.

note, both principal and interest will be distributed as received, 2/3 to the law firm and 1/3 to Manley. All proceeds retained by the law firm will constitute payment of legal fees by Manley at time of receipt to the law firm.

(Plaintiff's Exhibit 11 at 1-2.)

By letter dated September 9, 1975 Greenstein wrote to HROM in relevant part as follows:

I would appreciate knowing the amount, nature, and form of the settlement and hereby put you on notice that we are claiming an attorney's lien in the matter in the amount as follows: Balance due on costs advanced, $1,651.16; two month's work (Mr. Lotsof), $3,000.00; plus 10 percent of the amount to be received by Mr. Manley under the settlement.

(Plaintiff's Exhibit 25.)

HROM responded by a letter dated September 11, 1975 stating in relevant part as follows:

I enclose our check for $1,651.16[.] * * *

Mr. Manley indicated at the time of settlement that there were additional arrangements between you and he which he would take care of himself. It was my belief when he brought the file from your office to ours that you had a firm understanding regarding fees which would not involved [sic] this office.

(Exhibit A to Plaintiff's Exhibit 40.)

On September 25, 1975 Lotsof wrote to HROM in relevant part as follows:

[I]f you think that I will put 500 hours into a case, welcome you to work with me on it when trial seems almost certain, argue a Motion in Court to enable you to join, watch you settle it cheap because you never did prepare it adequately for trial, and then let you run off with the whole fee, you are very unrealistic.

The Manley case [Civil 3214] itself stood for the proposition that the person who sets up a sweet deal for others should not himself be frozen out when the others take over.

(Exhibit A to Plaintiff's Exhibit 40.)

By letter dated February 6, 1980, Greenstein wrote to Lotsof as follows:

This is to affirm our agreement that I have assigned to you my entire claim for attorneys' fees in the aforereferenced matter on the

condition that if you are successful in realizing any monies, you shall remit to my office the first $3,000.00, representing two months of your salary while in my employ.

(Defendant's Exhibit T.) Lotsof confirmed the agreement.

On September 19, 1980 HROM filed a complaint for a declaratory judgment that Lotsof was not entitled to any payment from HROM. Lotsof responded with a thirteen-count counterclaim for an award of all or a portion of HROM's ethically permissible share of the recovery in Civil 3214, all of HROM's allegedly ethically impermissible share, and punitive and treble damages. Manley was not a party in the case.

Lotsof asserted two claims against HROM: (1) As Greenstein's assignee, he claimed the fees due Greenstein. (2) He claimed fees of $65 per hour for the 11.9 hours he worked in April 1975 when he was on his terminal vacation from Greenstein's firm, the 2.5 hours he allegedly worked from May 1, 1975 through May 15, 1975 when he was no longer employed by Greenstein, and the 13 hours he allegedly worked after May 15, 1975 when Greenstein was no longer counsel in the case.

The lower court denied Lotsof's claims and ordered him to pay HROM costs in the amount of $2,825.28.

## I.

First, we will discuss the November 20, 1984 order requiring Lotsof to pay costs.

The order denying Lotsof's motion for a new trial was filed on July 10, 1984. Lotsof filed a notice of appeal on August 8, 1984. The order taxing costs was filed on November 20, 1984. Lotsof filed an "Amended Notice of Appeal" on November 28, 1984.

The lower court lost its jurisdiction over the case when Lotsof filed his first notice of appeal on August 8, 1984. *See Wisdom v. Pflueger,* 4 Haw. App. 455, 461, 667 P.2d 844, 849 (1983). Therefore, the November 20, 1984 order taxing costs is void.

## II.

Second, we will determine whether the doctrine of the division of the highest ethical contingency percentage to which the client contractually agreed is applicable in Hawaii. This doctrine is explained in *Saucier v. Hayes Dairy Products, Inc., on rehearing* 373 So.2d 102 (La. 1978), as

 

follows:

[W]e conclude that only one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.

We believe that this resolution comports with the letter and spirit of the Code of Professional Responsibility. It is an equitable solution to this problem. The amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause. We choose to vindicate the contingency fee contract rather than render it nugatory. * * *

This solution envisions apportionment of only the highest agreed upon contingent fee in accordance with factors set forth in the Code of Professional Responsibility. Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors. * * * [T]his solution should assure fair treatment of the client who will never be compelled to pay more than one reasonable contingency fee in an amount he has agreed to pay. * * *

This Court should not and will not countenance the payment of duplicitious and/or excessive fees. Nor will we allow the first attorney to be denied payment of the fee to which he is entitled. Therefore if the second attorney has already collected his contingent fee, and if the client, Mr. Saucier, asserts his right to recover from the second attorney the money paid to which the attorney is not entitled, that second attorney should be ordered to restore the same to Mr. Saucier as having been a payment of a thing not due. * * * The second attorney, along with the first attorney, will then be accorded the opportunity to establish his right to receive an appropriate apportionment of the one contingent fee owed by Mr. Saucier for legal services rendered in connection with his claim.

*Id.* at 118-119.

We find no merit in the *Saucier* doctrine. First, *Saucier* is incompati-

ble with the *quantum meruit* rule of *Booker v. Midpac Lumber Co., Ltd.,* 65 Haw. 166, 649 P.2d 376 (1982). Second, it fails to provide for the situation where, as here, the client knowingly and voluntarily agreed to pay the subsequent attorney a contingent fee of 50% and to pay the costs and fees due the prior attorney. Third, in some cases a contingent fee of 100% or more is ethically permissible.

DR 2-106 and -107 of the Hawaii Code of Professional Responsibility (1981) (Code) provide as follows:

DR 2-106   Fees for Legal Services.

(A) A lawyer shall not enter into an agreement for, charge, or collect in an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

Under the Code, a fee based on hourly rates or *quantum meruit* may exceed the amount of the client's recovery. Likewise, in cases where the value of the recovery is less than the value of the ethically permissible fee, a contingent fee of 100% or more than 100% of the client's recovery

is ethically permissible.

Moreover, the factors outlined in DR 2-106 are expressly not exclusive. In our view, the law of supply and demand is also a legitimate factor. Here, Manley was more interested in contracting for O'Connor's services than O'Connor was in contracting to serve Manley.

### III.

Third, we will review Lotsof's entitlement to recovery as Greenstein's assignee.

Originally, Manley agreed to pay Greenstein a contingent fee of one-third. When Manley discharged Greenstein, he agreed to pay Greenstein (a) a reasonable fee for Lotsof's services and (b) 10% of his net recovery.

When an attorney who is employed on a contingent fee contract is discharged without fault on his part before the happening of the contingency, the contingent fee contract is ended and the attorney is entitled to an award of the reasonable value of his services as agreed upon or as determined by the court under the guidelines of *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 413 P.2d 242 (1966), but in the exercise of its discretion. *Booker v. Midpac Lumber Co., Ltd., supra.* Under this rule, Greenstein was entitled to the reasonable value of his and Lotsof's services, and Manley's agreement to pay Greenstein 10% of Manley's net recovery was enforceable only to the extent the actual dollar amount it represented did not exceed the reasonable value of Greenstein's services. In our view, however, the percentage fee agreed upon after the discharge is presumptively reasonable and a party alleging that it exceeds that reasonable value of the prior services has the burden of proof on the issue.

### IV.

Fourth, we will review Lotsof's entitlement to recovery from HROM for his services in Civil 3214 during his terminal vacation from Greenstein's employ and thereafter.

In the lower court, Lotsof asserted many theories to support that portion of his claim against HROM. He appears to appeal only the denial of his theories of joint venture, implied contract, and unjust

enrichment.

Upon a review of the record, we find no error in the denial of recovery for his post-Greenstein services under any theory.

## V.

Fifth, we will review Lotsof's entitlement as Greenstein's assignee to any portion of the attorney fee Manley paid to HROM.

A. Initially, we will review Lotsof's entitlement to that portion of HROM's fee that was unquestionably ethically permissible.

As noted in section IV above, Lotsof failed in his effort to prove any basis for his claim of entitlement to HROM's ethically permissible fees. Therefore, the lower court did not err in this respect.

B. Secondly, we will review Lotsof's entitlement to the portion of HROM's fee that was allegedly ethically impermissible.

Any attorney who receives more than an ethically permissible fee from a client holds the excess in trust for the client's account. Any former attorney for the client in the case may require the trustee-attorney to remit all or part of the excess to him when by the client's agreement or judgment against the client he proves his unsatisfied entitlement to a specific amount of ethically permissible costs and fees in the case from the client.

Here, however, the lower court found that HROM's fee in this case was ethically permissible. Upon a review of the record, we find no error in that decision.

## VI.

Sixth, we will determine whether the lower court erred in refusing to enforce Lotsof's attorney's lien which he acquired by assignment from Greenstein.

On September 9, 1975 Greenstein advised HROM of his attorney's lien claim for fees. On February 6, 1980 Greenstein assigned his lien claim to Lotsof. However, HROM subsequently disbursed proceeds to Manley without satisfying Greenstein's or Lotsof's lien for fees.

Hawaii recognizes the right of a discharged attorney who served under a contingent fee agreement to assert a charging lien for costs advanced and reasonable attorney fees against his former client's recovery in the case. *Carroll v. Miyashiro,* 50 Haw. 413, 441 P.2d 638 (1968).[3]

*See also* 7 Am. Jur. 2d *Attorneys at Law* §§ 324-327 (1981). Thus, after Greenstein asserted his lien against Manley's portion of the recovery, HROM held Manley's portion of the recovery subject to the lien. On the other hand, HROM was not obligated to pay the lien until the lienor established by Manley's agreement or judgment against Manley the lienor's unsatisfied entitlement to a specific amount of ethically permissible costs and fees from Manley.

HROM paid the lien for costs. Lotsof asserted a lien for fees in two categories: (1) as Greenstein's assignee and (2) for his services during and after his terminal vacation from Greenstein's employ. With regard to category (2), Lotsof did not prove that Manley owed him anything for those services. There is no evidence in the record that Manley agreed to pay for these services. Moreover, the lower court found that Lotsof performed no work after April 30, 1975 that materially assisted HROM in the preparation and prosecution of the case. With regard to category (1), Lotsof did not prove the specific amount due. Since Lotsof failed to prove all of the material elements of his lien claim, the lower court did not err in refusing to enforce Lotsof's lien.[4]

### VII.

Accordingly, the May 23, 1984 judgment is affirmed. The November 20, 1984 order taxing costs is vacated.

*Charles S. Lotsof,* appellant pro se.

*Alexander C. Marrack (James R. Moore* and *Wesley H.H. Ching* with him on the brief; *Hoddick, Reinwald, O'Connor & Marrack* of counsel) for appellee.

---

[3]The court in *Carroll* noted that the order of substitution should be conditioned upon immediate reimbursement by the client to the outgoing attorney of court costs advanced. Apparently, that instruction was not followed when HROM replaced Greenstein in Civil 3214.

[4]In our view, Lotsof confused "owed" with "paid." Lotsof thought that Manley had "paid" all he should but that some of what Manley "paid" to HROM should have gone to Lotsof instead of HROM. However, the fact that Manley overpaid HROM did not mean that Manley did not "owe" Lotsof. It only meant that HROM owed Manley, and Lotsof had an alternative source of payment. If Manley did not "owe" Lotsof, then Lotsof had no basis for a lien against the amount HROM owed Manley.