133 P.3d 828

**James Leroy FRENCH,
Plaintiff–Appellee,**

v.

**Mary Lou FRENCH, Defendant–
Appellant.**

**No. 26708.**

Intermediate Court of Appeals of Hawai'i.

March 31, 2006.

---

Elizabeth C. Melehan, on the briefs, Wailuku, for Plaintiff–Appellee.

Samuel P. King, Jr., on the briefs, Honolulu, for Defendant–Appellant.

BURNS, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Mary Lou French (Mary Lou) appeals from the monetary judgments entered in the Family Court of the Second Circuit[1] after the commencement of appeal No. 25566 on December 18, 2002 and prior to its stipulated dismissal on July 19, 2004. For the reasons stated herein, we conclude that the monetary judgments are void because the family court did not have jurisdiction to enter them.

1. Judge Eric G. Romanchak presided.

## BACKGROUND

Plaintiff–Appellee James Leroy French (James) and Mary Lou were married on June 18, 1992. One daughter was born on September 22, 1994 and another was born on November 23, 1995.

The March 31, 1998 divorce decree entered by the court states, in relevant part:

> 3. *Child Custody*
>
> . . . .
>
> The parties are awarded joint legal and joint physical custody of the minor children, subject to the parenting schedule set forth below:
>
> . . . .
>
> 4. *Child Support.*
>
> . . . [N]either party shall be required to pay child support to the other party.
>
> . . . .
>
> . . . .
>
> 15. *Attorney's Fees and Costs:* [Mary Lou] shall pay to [James] his reasonable attorney's fees and costs incurred in this Divorce action. . . .
>
> 16. *Equalization Payment:* [Mary Lou] shall pay to [James], on account of the division of property, the sum of $60,225.00. Said payment shall be made no later than thirty (30) days of the effective date of this decree.
>
> . . . .
>
> 18. *Necessary Documents and Enforcement:* . . . A party who fails to comply with this decree may be liable to the other party for all of the legal fees and costs incurred and al[l] of the damages suffered by the other party as a result of noncompliance.

We label the judgment ordering Mary Lou to pay James $60,225.00 as "Monetary Judgment No. 1".

On December 24, 1998, the court entered an Order and Judgment ordering Mary Lou to pay the following:

$10,208.27   Mancini, Rowland & Welch
$17,990.33   Elizabeth C. Melahan
$ 1,500.00   James L. French

$29,698.60   TOTAL

We label this as "Monetary Judgment No. 2".

On January 7, 1999, the court entered an Order Granting Ex Parte Motion for Custody and an Order Sequestering Defendant's Assets and for Restraining Order that awarded James "temporary sole legal and physical custody of the minor children of the parties[.]"

On January 29, 1999, the court entered a judgment combining Monetary Judgment Nos. 1 and 2. We label this judgment as "Monetary Judgment No. 3". It was a combination of the following:

$60,225.00 plus 10% interest commencing May 1, 1998

$10,208.27 plus 10% interest commencing December 25, 1998

$17,990.33 plus 10% interest commencing December 25, 1998

$ 1,500.00 plus 10% interest commencing December 25, 1998

On June 9, 2000, in support of an ex parte motion, Elizabeth C. Melehan, as counsel for James, declared, in relevant part:

3. In April 2000, [Mary Lou] was arrested in Miami, Florida after having been deported from Panama City.

4. In May, 2000, I was informed that the FBI seized money and items of personal property which were found in [Mary Lou's] possession when she was arrested.

5. Upon information, the FBI is holding more than $55,000.00 cash which was found in [Mary Lou's] possession. They have held that cash pursuant to this Court's January 7, 1999 order and are awaiting instructions from this Court on how to disburse that money.

On June 9, 2000, the court entered an Ex Parte Order Regarding Sequestered Funds and Other Assets instructing the Federal Bureau of Investigation to turn over the monetary assets and all items of personal property to the Chief Clerk of the Second Circuit Court, State of Hawai'i, for further disposition by the court.

On May 31, 2001, the court entered an order stating, in relevant part, that "[t]he Federal Bureau of Investigation and any . . . federal agency is hereby ordered to turn over all of Mary Lou French's assets which are presently in the FBI's or other agency's possession to the Clerk of the Second Circuit Court, State of Hawaii[.]" Mary Lou appealed this order. On July 9, 2002, in appeal No. 24377, the Hawai'i Supreme Court entered a Summary Disposition Order vacating the May 31, 2001 order "inasmuch as the court did not indicate the federal statutory authority for its order[.]" In response, on November 18, 2002, the court entered "Findings of Fact, Conclusions of Law and Order on Plaintiff's Motion for Order to Show Cause Why the F.B.I. Should Not be Ordered Pursuant to the 6/9/99 [sic] Order to Turn Over Assets Held by Them" that stated, in relevant part:

*FINDINGS OF FACT*

. . . .

9. On or around April 28, 2000, [Mary Lou] was arrested in Panama City, Panama and was deported back to Miami, Florida.

10. On or around April 28, 2000, the Federal Bureau of Investigation arrested [Mary Lou] in Miami, Florida.

11. Upon [Mary Lou's] arrest, the Federal Bureau of Investigation seized from [Mary Lou] $55,035.00 in currency, a pearl necklace, a necklace pendant, a ruby and diamond ring, and various other personal items.

12. The Federal Bureau of Investigation informed counsel for [James] that, in accordance with the sequestration order, they were holding the money and personal items seized from [Mary Lou] until further instructions from this Court.

. . . .

23. At the May 23, 2001 hearing, [Chief Division Counsel, David Ego, Esq.] indicated that the Federal Bureau of Investigation no longer wished to retain control over the seized property and that the United States government had no interest in said property.

24. Mr. Ego indicated that the Federal Bureau of Investigation was seeking some direction from this Court as to where the property should be deposited.

25. Mr. Ego stated that the Federal Bureau of Investigation would abide by this Court's order regarding the disposition of the seized property.

. . . .

28. In compliance with the May 31, 2001 order, the F.B.I. turned over all of the property and assets it held to the Chief Clerk of the Family Court, State of Hawaii.

. . . .

### ORDER

NOW THEREFORE, for good cause appearing thereof, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1. The F.B.I. is hereby ordered to turn over to the Chief Clerk of the Second Circuit Court, any of [Mary Lou's] funds and assets held by the F.B.I. for further disposition.

On December 18, 2002, Mary Lou appealed from this order and thereby commenced appeal no. 25566.

On January 23, 2004, prior to the conclusion of appeal no. 25566, James filed a motion to replace Monetary Judgment No. 3 with a judgment in the amount of $143,539.61 to "account for attorney's fees, costs incurred in collecting on said judgment and interest to date and which would reflect the partial payments received as a result of the attachments and levies placed upon [Mary Lou's] property." This motion included requests for the following:

| | |
|---|---|
| fees to Best, Best & Krieger | $10,278.50 |
| costs to Best, Best & Krieger | $ 2,848.64 |
| fees to Best, Best & Krieger | $ 1,148.20 |
| fees to Kenny, Becker, LLP | $25,733.88 |
| fees to Elizabeth C. Melehan | $10,000.00 |
| fees to Elizabeth C. Melehan | $ 2,100.00 |
| costs to Elizabeth C. Melehan | $    45.00 |

Attached to the motion is the Declaration of James French that states, in relevant part:

18. When [Mary Lou] was arrested by the F.B.I., she was found with more than $55,000.00 in cash and valuable jewelry on her person.

19. My attorney attempted to attach the money and jewelry in order to partially satisfy the Judgment in this matter.

20. When I was able to secure an order that directed the FBI to turn the seized assets and other property over to the Clerk of the Second Circuit Court, [Mary Lou] appealed.

Also on January 23, 2004, James filed a Motion for Attorneys' Fees and Costs in which he stated, in relevant part:

On January 5, 1999, [Mary Lou] abducted the parties' children from Maui, Hawaii in contravention of this Court's award of joint custody. For nearly a year, [James] searched for his children, conducting depositions and other discovery, working with the FBI and the State Department. On January 17, 2000, the children were located in Costa Rica. It took an addition[al] three months to recover the children. In April 2000, [Mary Lou] was apprehended with the children in Panama after she had reabducted them, in violation of the terms of her release pending extradition to the United States.

On April 15, 2002, [Mary Lou] was convicted of Custodial Interference in the Circuit Court of the Second Circuit and sentenced to 6 months in jail and 5 years probation.

[Mary Lou] initially denied having access to the more than $1,000,000.00 in funds which she had transferred offshore during the course of her planning the abduction. However, [Mary Lou] has recently acknowledged that she has complied with a California court order to retransfer the funds to a United States bank account.

[Mary Lou's] flagrant disregard for this Court's March 31, 1998 Divorce Decree and the expense, time and harm that she caused [James] as a result of her disobedience warrants an award of attorney's fees and costs in this case.

Therefore, [James] seeks judgment against [Mary Lou] in the amount of

*$161,426.39*, plus his attorney's fees and costs incurred in preparing said motion.

The hearing was held on February 11, 2004.

On June 21, 2004, the family court filed various documents. First, in response to the first motion filed by James on January 23, 2004, the court entered an Order on Motion to Amend Judgment that replaced Monetary Judgment No. 3 with what we label "Monetary Judgment No. 4". It stated, in relevant part:

2. The Judgment entered herein on January 29, 1999 is hereby amended to reflect reasonable attorney's fees and costs and interest accrued as of February 11, 2004.
3. The Judgment as of February 11, 2004 is $91,398.39 with interest accruing at a rate of $25.04 per diem as of February 11, 2004.

To that amount, it added the following:

| | |
|---|---|
| fees to Best, Best & Krieger | $10,278.50 |
| costs to Best, Best & Krieger | $ 2,835.64 |
| fees to Best, Best & Krieger | $ 1,148.20 |
| fees to Elizabeth C. Melehan | $ 2,100.00 |
| costs to Elizabeth C. Melehan | $ 45.00 |

Exclusive of the undetermined amount of interest due on the $91,398.39, the total for this judgment was $91,398.39 plus $16,407.34 or $107,805.73.

Second, the court then entered an Amended Judgment in the amount of $107,805.73 which did not note the $25.04 per diem interest on the $91,398.39 that was accruing since February 11, 2004. We will label this judgment as "Monetary Judgment No. 5".

Third, in response to the Motion for Attorneys' Fees and Costs filed by James on January 23, 2004, the court entered a "Judgment and Order" that stated, in relevant part: "Judgment is hereby entered against

[Mary Lou] in favor of [James] in the amount of $181,060.27." This was the total of the following:

| | |
|---|---|
| expenses to James | $ 1,031.20 |
| fees to Margaret Bennet Solicitors | $ 1,500.00 |
| fees to Mary Elena Gamboa | $ 4,600.00 |
| fees to Kenney, Becker Solicitors, LLP | $ 25,733.88 |
| costs to Elizabeth Melehan | $ 15,788.94 |
| fees to Elizabeth Melehan | $138,506.25 |

We label this as "Monetary Judgment No. 6".

Fourth, the court entered a "Judgment for Attorney's Fees and Costs" in favor of James in the amount of $181,060.27. We label this as "Monetary Judgment No. 7".

On June 28, 2004, the court entered a Stipulated Order Regarding Release of Money and Other Property Held by the Clerk of the Second Circuit Court. On July 19, 2004, the Hawai'i Supreme Court "approved and so ordered" a Stipulation to Dismiss Appeal No. 25566 because the Stipulated Order mooted it.

On July 20, 2004, Mary Lou filed a notice of appeal. This appeal was assigned to this court on May 16, 2005.

### DISCUSSION

Mary Lou contends that the family court did not have subject matter jurisdiction to enter any of the monetary judgments while appeal no. 25566 was alive. In other words, she challenges the family court's subject matter jurisdiction to enter Monetary Judgment Nos. 4 through 7.

■ In civil cases where the party seeking attorney fees or costs fails to (1) have included within the order or judgment being appealed an award of costs and attorney fees, or (2) comply with HRAP Rule 4(a)(3)[2], the following rule applies:

---

**2.** Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a) (2006) states, in relevant part:

Appeals in Civil Cases.
(1) Time and Place of Filing. When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order. The notice of appeal shall be filed with the clerk of the court from which the appeal is taken....
. . . .
(3) Time to Appeal Affected by Post–Judgment Motions. If, not later than 10 days after entry of judgment, any party files a motion that seeks to reconsider, vacate, or alter the judg-

ment, or seeks attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.
The notice of appeal shall be deemed to appeal disposition of all post-judgment motions that are filed within 10 days after entry of judgment.
The 90–day period shall be computed as provided in Rule 26.

While a case is on appeal, the lower court lacks jurisdiction to decide any questions pertaining to attorney fees arising out of or relating to the matter on appeal. *Hoddick, Reinwald, O'Connor & Marrack v. Lotsof,* 6 Haw.App. 296, 300, 719 P.2d 1107, 1111 (1986); *Wisdom v. Pflueger,* 4 Haw. App. 455, 461, 667 P.2d 844, 849 (1983); *D'Elia v. Association of Apartment Owners of Fairway Manor,* 2 Haw.App. 350, 632 P.2d 298 (1981).

*Wong v. Wong,* 87 Hawai'i 475, 486, 960 P.2d 145, 156 (App.1998). This is the rule because of the relationship between the order or judgment being appealed and the decision whether or not to award fees and costs incurred in obtaining that order or judgment. The validity of the order or judgment being appealed is relevant when answering the question whether one party will be ordered to pay fees and costs incurred by the opposing party with respect to the entry of that order or judgment.

The instant case, however, is unusual. The "matter on appeal" is not the judgment on the merits. The "matter on appeal" is the family court's November 18, 2002 "Findings of Fact, Conclusions of Law and Order on Plaintiff's Motion for Order to Show Cause Why the F.B.I. Should Not Be Ordered Pursuant to the 6/9/99 [sic] Order to Turn Over Assets Held by Them" that stated, in relevant part:

### ORDER

NOW THEREFORE, for good cause appearing thereof, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1. The F.B.I. is hereby ordered to turn over to the Chief Clerk of the Second Circuit Court any of [Mary Lou's] funds

As noted above, HRAP Rule 4(a)(3) allows "10 days after entry of judgment" to file a motion seeking attorney's fees or costs. In contrast, Hawai'i Rules of Civil Procedure (HRCP) Rule 54(d) (2006) states:

Costs; Attorneys' Fees.

(1) Costs Other Than Attorneys' Fees. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

(2) Attorneys' Fees.

(A) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

(B) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of an appealable order or judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.

(C) The provisions of subparagraphs (A) and (B) do not apply to claims for fees and expenses as sanctions for violations of rules. This rule requires motions "for attorneys' fees and related nontaxable expenses" to be "filed and served no later than 14 days after entry of an appealable order or judgment[.]" It fails to note (1) that the filing of such a motion on the 11th, 12th, 13th or 14th day after entry of the appealable order or judgment will not extend the time to appeal the appealable order or judgment, and (2) an appeal of the appealable order or judgment "within 30 days after entry of the judgment or appealable order" as permitted by HRAP Rule 4(a)(1) (2006) (a) will transfer subject matter jurisdiction from the circuit court to the appellate court (b) but will not be deemed to appeal disposition of post-judgment motions that are not filed within 10 days after entry of judgment.

Neither the Hawai'i Family Court Rules (HFCR) nor the Hawai'i District Court Rules of Civil Procedure (HDCRCP) has a rule similar to HRCP Rule 54(d). HFCR Rule 54(d) (2006) states: "Costs shall be allowed where expressly provided by statute, stipulation, agreement or these rules."

HDCRCP Rule 54(d) (2006) states:

Costs. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

and assets held by the F.B.I. for further disposition.

Specifically, the "matter on appeal" is the November 18, 2002 order requiring the F.B.I. "to turn over to the Chief Clerk of the Second Circuit Court any of [Mary Lou's] funds and assets held by the F.B.I. for further disposition."

In his answering brief, James states:

[James] did not seek attorney's fees and costs associated with the November 18, 2002 Findings of Fact and Conclusions of Law and Order which was the subject of [Mary Lou's] December 18, 2002 appeal. The trial court, finding that it could not determine the reasonableness of [James'] request for his fees and costs related to the June 27, 2001 appeal, denied the request for those fees.

(Record citations omitted.) James argues that the "matter on appeal" is so unrelated to the monetary judgments for costs and attorney fees incurred to collect the judgments on the merits (Monetary Judgments Nos. 1, 2, and 3) and to enforce a judgment on the merits (the award of the physical custody of the children) that the appeal did not divest the family court of jurisdiction to enter those monetary judgments.

We do not reach the issue presented by James because, as noted above, James filed a motion to replace Monetary Judgment No. 3 with a judgment in the amount of $143,539.61 to "account for attorney's fees, costs incurred in collecting on said judgment and interest to date and which would reflect the partial payments received as a result of the attachments and levies placed upon [Mary Lou's] property." Nothing in the record shows, and the court did not find, that the attorney fees and costs requested and awarded did not include attorney fees and costs related to the F.B.I.'s involvement in this case. Consequently, the fees and costs awarded by Monetary Judgment Nos. 4 and 5 may include the fees and costs incurred relating to (1) the FBI's involvement in locating and arresting Mary Lou and in obtaining and holding Mary Lou's cash and other assets, and (2) actions and proceedings by James to obtain said cash and other assets from the FBI.

## CONCLUSION

Accordingly, the following judgments set forth below are void because when they were entered, the family court did not have jurisdiction to do so:

1. The June 21, 2004 Order on Motion to Amend Judgment in the amount of $107,805.73 (Monetary Judgment No. 4).

2. The June 21, 2004 Amended Judgment in the amount of $107,805.73 (Monetary Judgment No. 5).

3. The June 21, 2004 judgment in the Order on Motion for Attorney's Fees and Costs in the amount of $181,060.27 (Monetary Judgment No. 6).

4. The June 21, 2004 Judgment for Attorney's Fees and Costs in the amount of $181,060.27 (Monetary Judgment No. 7).